

1095 Avenue of the Americas
New York, NY 10036-6797
+1 212 698 3500 Main
+1 212 698 3599 Fax
www.dechert.com

LINDA C. GOLDSTEIN

linda.goldstein@dechert.com
+1 212 698 3817 Direct
+1 212 698 0684 Fax

December 8, 2017

**VIA ECF AND FEDEX**

Honorable William H. Pauley, III
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re: *Hughes v. Twenty-First Century Fox, Inc. et al.*, Case No. 1:17-cv-07093 (S.D.N.Y.) (WHP)

Dear Judge Pauley:

We write to request a pre-motion conference to discuss the Rule 12(b)(6) motion contemplated by Defendants Twenty-First Century Fox, Inc., Fox News Network, LLC (with Twenty-First Century Fox, Inc., "Fox"), Dianne Brandi and Irena Briganti (with Fox, the "Fox Defendants"). We will be prepared to address the proposed motion—which should result in the dismissal of all claims against the Fox Defendants—at the December 18, 2017 initial pretrial conference, or otherwise at the Court's convenience.

**The Allegations of the Complaint**

From 2013 through 2016, Plaintiff Hughes periodically appeared on Fox News Channel and Fox Business Network, as well as on other national cable news and radio networks. ¶¶ 17, 23, 55–56 (citations are to the Complaint, ECF No. 1). Her appearances on Fox shows were unpaid; the Complaint alleges only that Fox "covered the cost to do her hair and make-up" and "paid for her to travel to and from its headquarters," where its New York studios are located. ¶ 61. In April 2013, during one of these guest appearances, Plaintiff met Defendant Charles Payne, alleged to be an "anchor, host and contributor" at Fox. ¶¶ 64–65. In July 2013, when Plaintiff was visiting New York to appear on a Fox show, she and Payne had "sexual intercourse" in her hotel room, purportedly without her consent. ¶¶ 25–26. Plaintiff continued to have sex with Payne for two years, until at least June 2015, when she allegedly told him that "she was no longer willing to continue her relationship with him." ¶ 85.[1] Plaintiff alleges that after their sexual relationship

[1] Plaintiff contends that the two-year relationship was coerced, but concedes the existence of "personal emails between Payne and Ms. Hughes that suggest[] a consensual relationship[.]" ¶ 7.





ended, her appearances on Fox shows waned. ¶¶ 85–89. She did, however, continue to appear on other networks, most notably on CNN, where she was contracted to appear as a paid "contributor." ¶¶ 34, 55, 91.

In the Spring of 2017, two years after she had allegedly ended her relationship with Payne, Plaintiff alleges that she learned of rumors that she "had 'had an affair with someone at Fox[.]'" ¶ 36. She further alleges that she learned that was being "blamed for reports about an affair" with Payne and that "she had been blacklisted by Fox." ¶ 39. In late June 2017, Plaintiff's manager contacted counsel for Fox. ¶¶ 40–41. In the course of discussing a "business solution" to Plaintiff's concerns, the manager confronted Fox's counsel with Plaintiff's allegation that Payne had raped her during the couple's initial sexual encounter in 2013. *Id.* About 10 days later, the National Enquirer published a story headlined "Fox Rocked by Another Sex Scandal!" in which Payne purportedly issued an "apology" for having had a "consensual affair" with an unnamed woman. ¶ 43. The National Enquirer described the anonymous paramour as a "married colleague" and "former CNN and Fox News contributor," a description that does not apply to Plaintiff, who was never a Fox contributor. Since then, Plaintiff has given several interviews to national and local publications—including The New York Times and National Enquirer—about her relationship with Payne.

On September 18, 2017, Plaintiff filed the Complaint. The First and Second Causes of Action allege that all of the Defendants discriminated and retaliated against her, in violation of the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. L. § 296. The Fourth and Fifth Causes of Action make the same claims under the New York City Human Rights Law (the "NYCHRL"), N.Y. Admin. Code § 8–107. The Third Cause of Action alleges that Defendants Briganti and Brandi aided and abetted the alleged violations of the NYSHRL and the Seventh Cause of Action alleges that all Defendants defamed Plaintiff, based upon the publication of the National Enquirer article. The Fox Defendants will seek to dismiss the Complaint against them in its entirety on the following principal grounds, among others.

**1.** ***The Complaint does not plead facts establishing that Plaintiff was a Fox News employee.*** Plaintiff cannot assert a valid employment discrimination claim because she does not allege any facts supporting the Complaint's conclusory assertion that she was a Fox employee. Receiving compensation is the *sine qua non* of employee status under both the NYSHRL and NYCHRL. *Sweeney v. Bd. of Educ. of Rocky Point Union Free Sch. Dist.*, 491 N.Y.S.2d 455, 456–57 (2d Dep't 1985) (holding that NYSHRL does not apply to claims brought by unpaid volunteer); *Wang v. Phoenix Satellite Television US, Inc.*, 976 F. Supp. 2d 527, 533 (S.D.N.Y. 2013) (dismissing NYCHRL claims of unpaid intern); *see also O'Connor v. Davis*, 126 F.3d 112 (2d Cir. 1997) (affirming dismissal of Title VII claims brought by volunteer intern). Plaintiff does not assert that she was ever paid by Fox; all she alleges is that Fox "covered" the costs of grooming to appear on its shows and transportation to its studios. These expenses are incidental to her on-air appearances and cannot be considered "compensation" to Plaintiff. *See York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 126 (2d Cir. 2002) (incidental benefits such as





"[c]lerical support'" are "not sufficiently substantial" to be considered remuneration). This fundamental defect requires the dismissal of the first four causes of action in the Complaint.

2. ***The Complaint does not plead conduct constituting retaliation.*** The Second and Fifth Causes of Action do not state a claim for retaliation. To state a *prima facie* case of retaliation under the NYSHRL, a plaintiff must plead facts establishing that she suffered an "adverse *employment* action" as a result of her "protected activity." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (emphasis added). For retaliation under the NYCHRL, a plaintiff must plead facts showing that "defendants took an action that disadvantaged her" and that the adverse action was "reasonably likely to deter a person from engaging in protected activity." *Taylor v. City of New York*, 207 F. Supp. 3d 293, 308 (S.D.N.Y. 2016). Plaintiff's allegations that the Fox Defendants retaliated against her by "contriving a fabricated narrative based only [on] a purported consensual relationship between Plaintiff and Payne[]" do not meet either test. ¶¶ 111, 125. Publicizing an alternative to Plaintiff's account cannot be an "adverse employment action" for purposes of a retaliation claim under the NYSHRL, because Plaintiff does not even try to allege that she was employed by Fox in 2017. And courts have consistently ruled that defendants do not violate the statutes' anti-retaliation provisions merely by asserting their defenses, as Fox allegedly did when it purportedly conveyed its version of events to the National Enquirer. *See, e.g.*, *United States v. N.Y.C. Transit Auth.*, 97 F.3d 672, 677 (2d Cir. 1996) ("Reasonable defensive measures do not violate the anti-retaliation provision … even though such steps are adverse to the charging employee and result in differential treatment."); *Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 42 (1st Dep't 2012) ("Plainly, an employer is entitled to defend itself against an employee's charges, *even if the employee finds it searingly painful to hear himself criticized*.") (emphasis added).

3. ***The National Enquirer article cannot be the basis of a defamation claim.*** The Seventh Cause of Action for defamation is defective in many ways. Critically, defamation must be based on a false and defamatory statement that is specifically "of and concerning the plaintiff." *See, e.g.*, *Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014). No allegedly defamatory statement is identified in the Complaint, but Plaintiff does concede that the National Enquirer article—which we presume is the allegedly defamatory statement—*did not name her*. ¶ 43. Nor could Plaintiff's identity have been gleaned from the National Enquirer article, because it incorrectly described her as a "Fox News contributor." Also, as a "limited public figure," Plaintiff must allege facts showing that the challenged statements were made with actual malice, *i.e.*, "actual knowledge of its falsity[,] … a high degree of awareness of the statement's probable falsity, or … reckless disregard of its truth or falsity." *Contemp. Mission, Inc. v. N.Y. Times Co.*, 665 F. Supp. 248, 268 (S.D.N.Y. 1987). The Complaint does not allege any facts that could satisfy this demanding standard. Payne's knowledge cannot be imputed to Fox under agency principles, because his sexual relationship with Plaintiff was not within the scope of his employment. *See, e.g.*, *Holmes v. Lorch*, 329 F. Supp. 2d 516, 531–32 (S.D.N.Y. 2004); *N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 247, 251–52 (2002).





Respectfully submitted,

*/s/ Linda C. Goldstein*

Linda C. Goldstein

cc: All Counsel (by ECF)