UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- x

SCOTTIE NELL HUGHES,                          :
                                              :
                              Plaintiff,       :
                                              :
              - against -                      :
                                              :                17 Civ. 07093 (WHP)
TWENTY-FIRST CENTURY FOX, INC., FOX NEWS       :
NETWORK, LLC, DIANNE BRANDI, in her individual and :
professional capacities, IRENA BRIGANTI, in her individual :
and professional capacities and CHARLES PAYNE, in his :
individual and professional capacities,        :
                                              :
                              Defendants.       :
                                              :
-------------------------------------------------------------------------- x


**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO QUASH
THE FOX DEFENDANTS' NON-PARTY SUBPOENAS *DUCES TECUM***


DECHERT LLP
Andrew J. Levander
Linda C. Goldstein
Nicolle L. Jacoby
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500

*Attorneys for Defendants Twenty-First
Century Fox, Inc., Fox News Network, LLC,
Dianne Brandi and Irena Briganti*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ...................................................................................... 3

    A.    Plaintiff's Allegations That Defendants Falsely Imputed
           "Sexual Immorality" To Her.................................................................. 3

    B.    Evidence of Plaintiff's Extra-Marital Sexual Relations........................ 4

    C.    Relevant Procedural History .................................................................. 7

ARGUMENT ........................................................................................................... 8

    I.    The Discovery Sought Is Relevant to Plaintiff's Defamation Claims ................... 9

    II.    The Discovery Sought Is Relevant to Plaintiff's
          Sexual Harassment Claims .................................................................. 11

    III.    The Court Should Reject Plaintiff's Request To Restrict Fox Defendants'
          Conduct of Third-Party Discovery Pursuant to Fed. R. Civ. P. 45.................... 12

CONCLUSION...................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Glazier v. Fox*,
    No. CV 2014-106, 2016 WL 827760 (D.V.I. Mar. 2, 2016) ...................................................12

*Guccione v. Hustler Magazine, Inc.*,
    800 F.2d 298 (2d Cir. 1986)................................................................................................9, 10

*Shafer v. Time, Inc.*,
    142 F.3d 1361 (11th Cir. 1998) .............................................................................................11

*Tolbert v. Smith*,
    790 F.3d 427 (2d Cir. 2015)................................................................................................9, 10

*Weber v. Multimedia Entm't, Inc.*,
    No. 97 Civ. 0682 PKL THK, 1997 WL 729039 (S.D.N.Y. Nov. 24, 1997) ...................10, 11

*World Wide Ass'n of Specialty Programs v. Pure, Inc.*,
    450 F.3d 1132 (10th Cir. 2006) .............................................................................................11

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)................................................................................................................10

Fed. R. Evid. 405(b).........................................................................................................1, 10, 11

Fed. R. Evid. 412 Advisory Committee Notes to 1994 Amendments...............................10, 11, 12

N.Y. Comp. Codes R. & Regs. tit. 22, Part 1200, Rule 3.4.........................................................8

**INDEX OF EXHIBITS**

A       Affidavit of Kristina Lee Hall, dated January 25, 2018

B       Affidavit of Deanna Johnson, dated January 24, 2018

C       Affidavit of Thomas Feeney, dated February 13, 2018

D       Affidavit of Jennifer Burke, dated January 26, 2018

E       Declaration of Charles Payne, dated February 15, 2018

F       Email correspondence between Douglas Wigdor and Kristina Lee Hall with the subject line Scottie Hughes, dated September 18-19, 2017

G       Excerpts from Fox Defendants' Initial Disclosures, dated January 16, 2018

H       Email from Ellen Mossman to Douglas Wigdor, Jeanne Christensen, Michael Willemin, Jonathan Halpern, Jonathan Israel and Rachel Kramer with the subject line Hughes v. Twenty-First Century Fox, Inc. (17 Civ. 07093 (WHP)), dated January 30, 2018

I       Proof of Service for Ralph Humphries Subpoena

J       Proof of Service for Alexander Shively Subpoena

K       Excerpts from Fox Defendants' First Request for the Production of Documents by Plaintiff, dated January 29, 2018

## PRELIMINARY STATEMENT

Plaintiff Scottie Nell Hughes charges that the subpoenas she seeks to quash are an "attempt to shame" her by seeking evidence of her reputation and sexual history.  Mem. of Law in Supp. of Pl.'s Mot. to Quash ("Pl. Mem."), ECF Doc. 38, at 7.  But it was *Plaintiff* who put her reputation and sexual history at issue in this lawsuit when she sought damages from the Defendants for alleged defamation.  Counts Nine, Ten and Eleven of the Amended Complaint— which Plaintiff's papers all but ignore—are defamation claims.  Each of them asserts that she has suffered "reputational harm" from "false and defamatory statements imput[ing] sexual immorality" to her.  Amended Complaint ("Am. Compl."), ECF Doc. 29, ¶¶ 240, 243, 250, 253, 260, 263.  Because "substantial truth" is a defense to defamation, Plaintiff's own "sexual immorality" would negate her defamation claims.  Her apparent extra-marital affairs with men other than Defendant Charles Payne, including the four subpoena recipients at issue here, are not only a proper subject of discovery under Fed. R. Civ. P. 26, evidence of those liaisons is fully admissible under Fed. R. Evid. 405(b).

In addition, Plaintiff's conduct of extra-marital affairs with any of Ralph Humphries, Dustin Stockton, Alex Shively and Wayne Dupree would provide an important defense to Plaintiff's claims of sexual harassment:  that she pursued sexual relationships with conservative media figures and politicians who she believed could advance her career and her two-year sexual relationship with Payne was consistent with this pattern.  Indeed, rumors that Plaintiff "regularly slept with powerful conservative men in the industry to work her way up the ladder" have "long dogged" her career, as she herself acknowledged in a cover story interview with her home town paper.  Ex. T to Decl. of Linda C. Goldstein, ECF Doc. 36-20, at 15.

Defendants have a good faith basis to believe that Humphries, Stockton, Shively and Dupree may be able to provide evidence of Plaintiff's extra-marital affairs.  Plaintiff's Declaration concedes that she has had a professional relationship with each of these four conservative media and political figures:  she appeared as a guest on radio shows hosted by Humphries and Dupree; Stockton was the chief strategist at Tea Party News Network, Plaintiff's employer; and Shively was a legislative liaison for the Tea Party Leadership Fund.  Decl. of Scottie Nell Hughes, ECF Doc. 40, ¶¶ 11, 16, 19-20, 24.  And critically, *sworn affidavits from, and interviews with, disinterested non-party witnesses offer compelling evidence suggesting that Plaintiff had extra-marital sexual relations with them.*  This evidence comes from three of Plaintiff's former co-workers at the Tea Party News Network.



Plaintiff's suggestions that these four subpoenas be deferred until after Plaintiff's document production, Pl. Mem. at 6, or that Defendants be required to "contact Plaintiff's counsel for a meet and confer before issuing any further non-party subpoenas," Decl. of Jeanne

---

[1]      All exhibits and affidavits ("Ex. _") are attached to the Declaration of Linda C. Goldstein, dated February 15, 2018.

M. Christensen, ECF Doc. 39, ¶ 3, have no legal basis.  The nature of the evidence sought means that the risk of spoliation is high; if such evidence still exists, it should be obtained quickly. Plaintiff's counsel's obstructive dealings with prospective witnesses heighten that risk; in September 2017, upon the filing of this action, Douglas Wigdor threatened legal action against one of the affiants if she were to "disseminate publicly" any negative information about Plaintiff.

The subpoenas to Messrs. Humphries, Stockton, Shively and Dupree seek relevant evidence of Plaintiff's sexual immorality and her pattern of sexual relationships with men she thought could advance her career.  The motion to quash should be denied, as should Plaintiff's requests for the Court's assistance in her improper attempts to hamstring Defendants' fact-gathering in support of their defenses.

## STATEMENT OF FACTS

### A.  Plaintiff's Allegations That Defendants Falsely Imputed "Sexual Immorality" To Her

Plaintiff alleges that she was defamed by a story published by the National Enquirer reporting that Defendant Payne had engaged in a "romantic affair" with an unnamed married colleague.[2]  She alleges that the National Enquirer article portrayed "Payne and Ms. Hughes [as] simply consenting adults in an ordinary, albeit adulterous, 'romantic affair.'"  Am. Compl. ¶ 148. In her view, the article was defamatory because, while Plaintiff concedes that she engaged in sexual relations with Payne over a two-year period, *id*. ¶¶ 31, 113, and that she was married when she did so, *id*. ¶ 157, Payne allegedly "used his position of power to pressure Ms. Hughes into submission," *id*. ¶ 32.  Plaintiff contends that "[d]epicting what happened as consensual

---

[2]      As discussed in the Joint Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint, the National Enquirer article is not actionable because, among other reasons, it is not "of and concerning" Plaintiff.  ECF Doc. 35 at 27–29.

adultery necessarily exposed Ms. Hughes to public contempt, ridicule, aversion and disgrace." *Id.* ¶ 157.  Each of the Ninth, Tenth and Eleventh Causes of Actions allege that the National Enquirer article "imputed sexual immorality in connection with Plaintiff."  *Id.* ¶¶ 240, 250, 260. Each also alleges that her "reputation" was harmed as a result.  *Id.* ¶¶ 243, 253, 263.  Through these unambiguous (albeit baseless) allegations, Plaintiff has put her sexual morality and reputation at issue in this case.

### B.  Evidence of Plaintiff's Extra-Marital Sexual Relations

Sworn affidavits from three of Plaintiff's former colleagues at the Tea Party News Network provide more than probable cause to believe that Plaintiff engaged in adulterous relationships with *many* men, and that she did so as part of a concerted effort to advance her career.  ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████  More specifically, these affidavits provide reason to believe that Plaintiff may have engaged in extra-marital sexual relations with the individuals to whom the Fox Defendants have issued subpoenas.

***Ralph "Rusty" Humphries***.  Humphries is a nationally syndicated conservative radio host.  ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████

        ████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

  ***Alexander "Alex" Shively***.  Shively is a former congressional staffer and Washington

D.C.-based lobbyist. ████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████

***Dustin Stockton***. ███████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████

***Wayne Dupree***.  Dupree is a conservative radio personality, host of the Wayne Dupree Show. ████████████████████████████████████████████████

███████████████████████████████████████

The affidavits suggest that Plaintiff pursued other conservative figures as well. ████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████

The subpoenas at issue on this motion all seek Plaintiff's correspondence with

Humphries, Shively, Stockton and Dupree, as well as any photographs or other recordings that

might evidence the sexual nature of her relationships with them.  This is far from a fishing

expedition.  ████████████████████████████████████████████████████

████████████████  *see also* Ex. P to Decl. of Linda C. Goldstein, ECF Doc. 36-16.  ████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

If Plaintiff did indeed have affairs with Humphries, Stockton, Shively or Dupree, Plaintiff

may have done the same with them.  ██████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████  Images and recordings of Plaintiff with men who are not her husband would be highly

probative, relevant evidence of Plaintiff's sexual immorality and her pattern and practice of

seducing men who she thought could advance her career.  They are a proper subject of the

subpoenas.

### C.  Relevant Procedural History

On January 16, 2018, the parties exchanged initial disclosures pursuant to Federal Rule of

Civil Procedure 26.  Plaintiff later amended her initial disclosures, identifying a total of 48

individuals who may have information relevant to Plaintiff's claims.  In neither set of disclosures

did Plaintiff specifically identify anyone who would provide evidence on how her reputation was

affected by the National Enquirer article.  Strikingly, Plaintiff did not identify Hall or any of her

other former Tea Party News Network colleagues as persons in possession of relevant documents

or information, even though her counsel believed that Hall "may be in possession of emails"

between Plaintiff and Payne and threatened her with legal action if she were to disseminate those documents. Ex. F.[3]

In the Fox Defendants' initial disclosures, the Fox Defendants stated their intention to rely upon evidence from "[o]ther witnesses to be identified" on "Plaintiff's reputation for conducting adulterous affairs with Payne and others" and "Plaintiff's conduct of adulterous affairs." Ex. G. Given that the identities of such potential witnesses are better known to Plaintiff than to the Fox Defendants, nothing more was required at that time. The Fox Defendants expressly reserved the right to amend or supplement their disclosures as the investigation into Plaintiff's claims is ongoing, and have since amended their initial disclosures to provide the names of Hall, Johnson and Burke as well as Humphries, Stockton, Shively and Dupree.

At 12:02 p.m. on January 30, 2018, the Fox Defendants served a notice of subpoenas on counsel for Plaintiff, attaching the four subpoenas the Fox Defendants intended to serve on Dupree, Humphries, Shively and Stockton. Ex. H. The Humphries and Shively subpoenas were served later that day. Exs. I, J.

## ARGUMENT

Plaintiff does not seek to quash the subpoenas to Dupree, Humphries, Shively or Stockton on any of the procedural grounds contemplated by Federal Rule of Civil Procedure 45(d)(3)(a). Instead, she argues that the subpoenas do not seek relevant information and complains that they were issued in an attempt "to shame" her. But Plaintiff is wrong on both counts. The Fox Defendants seek highly relevant, discoverable information from Dupree, Humphries, Shively and Stockton. Plaintiff herself has put her reputation and her sexual history

---

[3]    Such a threat of legal action against a potential witness may be an ethical violation. *See* N.Y. Comp. Codes R. & Regs. tit. 22, Part 1200, Rule 3.4(a), (e).

at issue by filing defamation claims against Defendants.  If Plaintiff wishes to seek damages because the National Enquirer purportedly described her relationship with Payne as adulterous, she must be prepared for discovery into her many reputed adulterous affairs.  Defendants should also be permitted to prove that Plaintiff's pursuit of a sexual relationship with Payne was consistent with an established practice of pursuing sexual liaisons with men who she thought could advance her career.

## I.  The Discovery Sought Is Relevant to Plaintiff's Defamation Claims

Plaintiff has brought three causes of action for defamation against Defendants, claiming that Defendants defamed her through a story that appeared in the National Enquirer—*which did not name or otherwise identify Plaintiff*—reporting Defendant Payne's affair with a married colleague.  To establish these causes of action, Plaintiff must show that the alleged defamatory statement is "false," as the Amended Complaint acknowledges.  Am. Compl. ¶¶ 240, 250, 260. If the allegedly defamatory statement is "substantially true," the claim must be dismissed.  "In New York, a statement need not be *completely* true, but can be *substantially* true, as when the overall 'gist or substance of the challenged statement' is true."  *Tolbert v. Smith*, 790 F.3d 427, 440 (2d Cir. 2015) (emphasis in original) (affirming grant of summary judgment where allegedly defamatory statement about terminated employee was "substantially true").

The "substantial truth" defense has been used to dismiss libel claims where, as here, the plaintiff claimed to have been defamed by a false charge of adultery.  In *Guccione v. Hustler Magazine, Inc.*, the allegedly defamatory statement asserted that plaintiff was married, but had a live-in girlfriend, while the truth was that plaintiff was divorced, but had engaged in an adulterous relationship for many years when he was still married.  800 F.2d 298, 302 (2d Cir. 1986).  The Second Circuit held that the "gist" of the alleged defamatory statement was that the plaintiff was an adulterer and even if he was not currently engaged in adultery, the substantial

truth defense barred his defamation claim.  *Id.*  In other words, both the truth and the alleged

defamatory statement would have led the reader to conclude that the plaintiff was an adulterer.

Plaintiff claims that the statement in the National Enquirer accused her (though she was

not named) of having an adulterous affair with Defendant Payne.  The "gist" of the statement

(assuming, for the purposes of this argument, that it concerned her), was that Plaintiff engaged in

an adulterous relationship.  Plaintiff's history of engaging in adulterous affairs is highly relevant

to showing the substantial truth of the allegedly defamatory statement.  Her reputation for

engaging in such affairs is highly relevant to whether she has suffered any reputational damage.

Thus, the documents sought from Dupree, Humphries, Shively and Stockton are discoverable.

*See Weber v. Multimedia Entm't, Inc.*, No. 97 Civ. 0682 PKL THK, 1997 WL 729039, at *2

(S.D.N.Y. Nov. 24, 1997) (where statement accused plaintiff of being a prostitute, court

permitted discovery into plaintiff's past sexual encounters to see if plaintiff previously had

sexual relations in exchange for anything of value); Fed. R. Civ. P. 26(b)(1) ("Parties may obtain

discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.").

Because the documents sought from Dupree, Humphries, Shively and Stockton are

relevant to the defense of Plaintiff's claims, the Fox Defendants need not show that those

documents would also be admissible in order to obtain this discovery.  Fed. R. Civ. P. 26(b)(1);

Fed. R. Evid. 412 Advisory Committee Notes to 1994 Amendments (discovery of an alleged

victim's past sexual conduct "will be continued to be governed by Fed. R. Civ. P. 26").

Nevertheless, they plainly would be.  Under Federal Rule of Evidence 405(b), "[w]hen a

person's character or character trait is an essential element of a charge, claim or defense, the

character or trait may also be proved by relevant specific instances of the person's conduct."

Fed. R. Evid. 405(b).  Plaintiff has put her character at issue by bringing defamation claims that

allege "reputational harm."  *See World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1138 (10th Cir. 2006) (holding that district court did not err in admitting "specific instances of conduct" because Rule 405(b) permits instances of conduct when character is at issue, and character of the plaintiff is at issue in a defamation case); *Shafer v. Time, Inc.*, 142 F.3d 1361, 1372 (11th Cir. 1998) (holding that the assertion of damage to reputation in a libel or defamation action makes the plaintiff's character an essential element of the claim).

Plaintiff mistakenly points to Federal Rule of Evidence 412, contending that evidence of Plaintiff's sexual or romantic communications and reputation would be inadmissible in any trial of this matter.  Pl. Mem at 2 n.1.  But this is a defamation case in which Plaintiff has put her conduct of adulterous affairs—and her reputation for conducting such affairs—directly at issue. The Advisory Committee Notes expressly state that the restrictions of Rule 412 do not apply "in a defamation action involving statements concerning sexual misconduct in which the evidence is offered to show that the alleged defamatory statements were true or did not damage plaintiff's reputation."  Fed. R. Evid. 412 Advisory Committee Notes to 1994 Amendments.  Rule 412 cannot prevent discovery of the evidence sought here.  *See Weber*, 1997 WL 729039, at *2 (Rule 412 does not govern discovery of the plaintiff's sexual history in a case alleging defamation).

## II.  The Discovery Sought Is Relevant to Plaintiff's Sexual Harassment Claims

Even if Plaintiff's defamation claims do not survive the pending motion to dismiss, the evidence sought in the four subpoenas is discoverable because it is relevant to an important defense to Plaintiff's sexual harassment claims.  As substantiated by the Hall, Johnson and Burke affidavits, Plaintiff was a serial sexual predator who pursued liaisons with men she thought could advance her career.  Defendants should be permitted to obtain discovery showing that her sexual relationship with Payne followed this well-established pattern.

Such evidence would be admissible under Federal Rule of Evidence 412(b), which permits the admission of evidence about an alleged victim's sexual history when its probative value outweighs any unfair prejudice.  For example, in *Glazier v. Fox*, No. CV 2014-106, 2016 WL 827760, at *5 (D.V.I. Mar. 2, 2016), where the plaintiff sought damages for sexual assault from an elderly defendant, the district court permitted testimony about the plaintiff's "flirtatious conduct" with another elderly man.  *Id*.  The court reasoned that such testimony was admissible under Federal Rule of Evidence 412(b) because the defendant contended "that Plaintiff was engaged in a 'shake down' effort in which she was targeting elderly gentleman" and that her "conduct with Defendant is practically identical to what Plaintiff allegedly did earlier" with another elderly man.  *Id.*  While any determination as to the admissibility of the evidence sought in the subpoenas is premature at this juncture, *a fortiori* the substantial evidence of Plaintiff's pattern of behavior amply justifies its discovery under Federal Rule of Civil Procedure 26.

## III. The Court Should Reject Plaintiff's Request To Restrict Fox Defendants' Conduct of Third-Party Discovery Pursuant to Fed. R. Civ. P. 45

Plaintiff concedes, as she must, that the Fox Defendants fully complied with Federal Rule of Civil Procedure 45 in issuing the subpoenas to Dupree, Humphries, Shively and Stockton by giving Plaintiff notice of the subpoenas before serving them.  Pl. Mem. at 3.  Plaintiff has not identified any basis for a meet and confer between Plaintiff and the Fox Defendants in advance of service.  Further, given the nature of the documents sought from these four witnesses and the risk that they might be destroyed, the Fox Defendants had a legitimate reason to give Plaintiff only the minimum legally required notice for the subpoenas.

Nor is there any reason to require the Fox Defendants to wait for Plaintiff's production before serving non-party subpoenas, as Plaintiff contends.  Pl. Mem. at 6.  Plaintiff may well have documents that Humphries, Shively, Stockton and Dupree also possess, and Defendants

have requested them from her.  *See* Ex. K, Req. Nos. 24, 26, 35.  But given the nature of the documents involved, the Fox Defendants have good reason to suspect that Plaintiff may have destroyed her own correspondence with these witnesses; it is reasonable for the Fox Defendants to seek these documents from Humphries, Shively Stockton and Dupree before they have an opportunity to do the same.

## CONCLUSION

As set forth above, Plaintiff's motion to quash the Fox Defendants' Subpoenas should be denied.

Dated:      New York, New York
            February 15, 2018

DECHERT LLP

By:   */s/ Linda C. Goldstein*
       Andrew J. Levander
       Linda C. Goldstein
       Nicolle L. Jacoby

1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500

*Attorneys for Defendants Twenty-First Century Fox, Inc., Fox News Network, LLC, Dianne Brandi and Irena Briganti*