UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SCOTTIE NELL HUGHES,

                        Plaintiff,

              - against -

TWENTY-FIRST CENTURY FOX, INC., FOX NEWS
NETWORK, LLC, DIANNE BRANDI, in her individual and
professional capacities, IRENA BRIGANTI, in her individual
and professional capacities and CHARLES PAYNE, in his
individual and professional capacities,

                    Defendants.

17 Civ. 07093 (WHP)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# MEMORANDUM OF LAW IN OPPOSITION TO
# *PRO HAC VICE* APPLICATION OF TY CLEVENGER


DECHERT LLP
Andrew J. Levander
Linda C. Goldstein
Nicolle L. Jacoby
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500

*Attorneys for Defendants Twenty-First
Century Fox, Inc. and Fox News Network,
LLC*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 2

    A.    Sanctions Imposed on Mr. Clevenger by Ten Judges in the
            D.C. Federal Courts ..................................................................... 2

    B.    Mr. Clevenger's Suspension by and Resignation from the Bar of the
            United States District Court for the District of Columbia ..................... 7

    C.    Sanctions Imposed on Mr. Clevenger in the Western District of Texas by
            Four Federal Judges Resulting in a Public Reprimand by the
            Texas State Bar ........................................................................ 8

    D.    Pending Disciplinary Charges Brought Against Mr. Clevenger by the
            California State Bar..................................................................... 9

    E.    Mr. Clevenger's History in this Court .............................................. 10

    F.    Other Examples of Mr. Clevenger's Ongoing Misconduct ................... 13

ARGUMENT ................................................................................................. 14

    THE COURT SHOULD DENY MR. CLEVENGER'S *PRO HAC VICE*
    APPLICATION ......................................................................................... 14

CONCLUSION............................................................................................... 16

# TABLE OF AUTHORITIES

**CASES**

*El Gemayel v. Seaman,*
    72 N.Y.2d 701 (1988) ............................................................................................16

*Gover v. Savyon,*
    111 A.D.3d 887 (2d Dep't 2013) ..........................................................................16

*In re Morrisseau,*
    763 F. Supp. 2d 648 (S.D.N.Y. 2011) ...................................................................15

*In re Rappaport,*
    558 F.2d 87 (2d Cir. 1977) .....................................................................................15

*In re Roel,*
    3 N.Y.2d 224 (1957) ..............................................................................................16

*Samouroukov v. Kamenev,*
    51 Misc. 3d 141(A) (N.Y. App. Term. 2016) ........................................................16

*Spanos v. Skouras Theaters Corp.,*
    364 F.2d 161 (2d Cir. 1966) ...................................................................................16

**STATUTES**

New York Judiciary Law § 478 ....................................................................................16

**OTHER AUTHORITIES**

Local Rule 1.3(c) of the United States District Courts for the Southern & Eastern
    Districts .....................................................................................................................14

N.Y. Rule of Professional of Conduct 3.6 ...................................................................16

# INDEX OF EXHIBITS

A  Charge of Improper Professional Misconduct, No. 1:16-mc-02240-CRC-RDM-APM (D.D.C. Dec. 3, 2015), ECF No. 1.

B  Order, *Robertson v. Cartinhour*, No. 10-7033 (D.C. Cir. Sept. 3, 2010).

C  Order, *Robertson v. Cartinhour*, No. 10-7033 (D.C. Cir. Oct. 19, 2010).

D  Order, *Robertson v. Cartinhour*, No. 10-7033 (D.C. Cir. Dec. 14, 2010).

E  Memorandum and Order, *In re: W.A.R. LLP*, No. 1:11-cv-01574-RCL (D.D.C. Apr. 2, 2012), ECF No. 33.

F  Memorandum Opinion and Order, *Robertson v. Cartinhour*, No. 1:11-cv-01919-ESH (D.D.C. Aug. 30, 2012), ECF No. 121.

G  Order, *In the Matter of: W.A.R. LLP*, No. 12-7010 (D.C. Cir. Jan. 31, 2013).

H  Order, *In the Matter of: W.A.R. LLP*, No. 12-7010 (D.C. Cir. Mar. 27, 2013).

I  Order, *In re: Sealed Case*, No. 13-8501 (D.C. Cir. May 16, 2014).

J  Order and Accompanying Letter Attachment, No. 1:16-mc-02240-CRC-RDM-APM (D.D.C. Nov. 30, 2016), ECF Nos. 26, 28.

K  Agreed Judgment of Public Reprimand, *Commission for Lawyer Discipline v. Ty Odell Clevenger*, No. 380-01407-2013 (Dist. Ct., Collin Cty. Aug. 18, 2014); Second Amended Disciplinary Petition and Request for Disclosure, *Commission for Lawyer Discipline v. Ty Odell Clevenger*, No. 380-01407-2013 (Dist. Ct., Collin Cty. June 30, 2014).

L  Notice of Disciplinary Charges, *In the Matter of: Ty Odell Clevenger*, Nos. 16-J-17320, 17-J-00289 (Cal. State Bar Ct. June 9, 2017).

M  Answer, *In the Matter of: Ty Odell Clevenger*, Nos. 16-J-17320, 17-J-00289 (Cal. State Bar Ct. July 3, 2017).

N  Order, *Clevenger v. Dresser*, No. 3:17-cv-02798-WHA (N.D. Cal. Oct. 19, 2017), ECF No. 51.

O  Attorney Search Entry for Ty Odell Clevenger, #216094, State Bar of California, http://members.calbar.ca.gov/fal/Member/Detail/216094.

P  Email correspondence between Ellen L. Ratigan of Dechert LLP and the Help Desk of the Southern District of New York with the subject line "Attorney Admission Information," dated June 7, 2018.

Q  Pete Brush, *Judge Quizzes Wigdor On Bid To Quit Repping Ex-Fox Pundit*, Law360 (June 7, 2018), https://www.law360.com/articles/1051644/.

R       Plaintiffs' Response to Russ & McCullough Defendants' Motion to Dismiss or, in the Alternative, Motion to Transfer Venue, Motion for a More Definite Statement, and Original Answer and Counterclaim, *Erwin v. Russ*, No. 4:09-cv-01894 (S.D. Tex. Dec. 21, 2009), ECF No. 29.

S       State Bar Appellees' Answer Brief, *Clevenger v. Moawad*, No. 17-17136 (9th Cir. Apr. 13, 2018).

T       Submission of Proposed Scheduling Order, *Spears v. Texas Department of Public Safety*, No. 1:15-cv-00511-RP (W.D. Tex. Sept. 11, 2015), ECF No. 10.

U       Find a Lawyer Entry for Ty Odell Clevenger, Bar Card No. 24034380, State Bar of Texas, https://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer &template=/Customsource/MemberDirectory/MemberDirectoryDetail.cfm&ContactID= 208016.

V       Opposition to Ty Clevenger's Motion for Permission to Appear Pro Hac Vice, *Rich v. Butowsky*, No. 1:18-cv-00681-RJL (D.D.C. June 13, 2018), ECF No. 24.

## PRELIMINARY STATEMENT

On June 5, 2018, Ty Clevenger filed a motion for permission to appear *pro hac vice* for Plaintiff Scottie Nell Hughes.  In support of his application, he included an affidavit that refers to his extensive disciplinary history in two states and multiple federal courts, including: (1) sanctions imposed by the United States District Court for the Western District of Texas; (2) sanctions imposed by the D.C. District Court, the D.C. Bankruptcy Court, and the D.C. Circuit Court of Appeals; (3) a reprimand imposed by the Texas State bar; (4) a suspension and fine imposed by the bar of the D.C. District Court and Mr. Clevenger's required resignation from that bar; and (5) a pending disciplinary proceeding before the California State bar.  Perhaps sensing that his checkered record might disqualify him from practicing in this Court, Mr. Clevenger offers up various excuses for it, including allegations of "misconduct and chicanery" against two of the seventeen federal judges who have sanctioned or disciplined him.  Clevenger Aff., Doc. No. 70-1, ¶ 6.

Even the partial facts disclosed by Mr. Clevenger speak for themselves, and give this Court more than enough reason to deny Mr. Clevenger the privilege of practicing in the United States District Court for the Southern District of New York.  But notwithstanding Mr. Clevenger's attempt to imply that his proven contempt for a lawyer's professional obligations is behind him ("I have not been sanctioned or disciplined for anything that occurred after 2012," *id*. ¶ 12), his misconduct is clearly ongoing.

First, his *pro hac vice* application is incomplete.  It does not identify all of the sanctions and censures imposed on Mr. Clevenger.  Nor does it give the Court the basic information required by Local Rule 1.3(c), in that it strings together myriad excuses for the sanctions and disciplinary actions imposed on him without providing the actual "facts and circumstances" on

which they were based.  One of those circumstances is that he has been sanctioned for

misconduct that he committed *in this Court* the only time he was admitted *pro hac vice* here.

Second, when this Court permitted Mr. Clevenger to attend the *ex parte* hearing on

Wigdor LLP's motion to withdraw while his own *pro hac vice* application remained pending, he

betrayed this Court's trust by immediately speaking to a reporter about what had happened at the

*in camera* proceeding.  That evening, the reporter published a story about the *in camera*

proceeding based on Mr. Clevenger's account.  Mr. Clevenger's current adversary in another

proceeding has complained about similar kinds of extrajudicial disclosures on Mr. Clevenger's

blog.

The sanctions and disciplinary penalties previously imposed on Mr. Clevenger have not

succeeded in reforming his conduct.  Defendants Twenty-First Century Fox, Inc. and Fox News

Network, LLC (the "Fox Defendants") therefore oppose Mr. Clevenger's motion to appear *pro

hac vice* in this action.

## STATEMENT OF FACTS

Because Mr. Clevenger's own affidavit is at once cryptic, incomplete and evasive, we set

forth the publicly available facts about the sanctions and disciplinary proceedings imposed upon

him in some detail.

### A.  Sanctions Imposed on Mr. Clevenger by Ten Judges in the D.C. Federal Courts

Mr. Clevenger was sanctioned by two different District Court judges and one Bankruptcy

Court judge in the District of Columbia, and unanimously sanctioned twice and censured by

three different three-judge panels of the D.C. Circuit (composed of seven different D.C. Circuit

judges).  These sanctions are detailed in the Charge of Improper Professional Misconduct filed

against Mr. Clevenger on December 3, 2015 in the United States District Court for the District of Columbia.  *See* Ex. A.[1]

The sanctions and censure in the D.C. federal courts all arose from Mr. Clevenger's representation of his client and friend, attorney Wade Robertson, in connection with a lawsuit concerning $3.5 million that Mr. Robertson misappropriated from an 82 year-old retired physician, William Cartinhour (the "*Robertson* Action").  *Id.* at 2.  As described in a March 16, 2012 opinion by Judge Huvelle, Dr. Cartinhour contributed $3.5 million to a partnership (W.A.R. LLP) created to pursue a securities class action in which Mr. Robertson served as counsel.  *Robertson v. Cartinhour*, 867 F. Supp. 2d 37, 43 (D.D.C. 2012), *aff'd*, 553 F. App'x 1 (D.C. Cir. 2014).   After the securities class action case was dismissed, Mr. Robertson transferred the remaining $3.4 million into an account in his own name.  *Id.*  D.C. District Court Judge Huvelle presided over a jury trial on Dr. Cartinhour's claims for fraud, breach of fiduciary duty and legal malpractice, which resulted in a $7 million verdict (including $3.5 million in punitive damages) against Mr. Robertson.  *Id.* at 44-46.

The sanctions against Mr. Clevenger imposed by the D.C. courts specifically concerned his pre-trial and post-judgment misconduct in connection with the *Robertson* Action.  In an improper effort first to delay the trial, and then to frustrate enforcement of the resulting judgment in favor of an elderly creditor, Mr. Clevenger sought to stay the case through appellate motions, W.A.R. LLP's bankruptcy proceedings and also a RICO action (initially filed in this District) based on the same facts and claims (the "RICO Action").  *Id.* at 46-47.

The first D.C. federal court to sanction Mr. Clevenger was the D.C. Circuit, where Mr. Clevenger made multiple motions to stay trial of the *Robertson* Action on various grounds.

---

[1]       The documents cited "Ex. _" are attached to the accompanying Declaration of Linda C. Goldstein.

After Mr. Clevenger sought reconsideration of the court's denial of the second such motion, on September 3, 2010, the D.C. Circuit cautioned Mr. Clevenger that it "looks with extreme disfavor upon unnecessary pleadings" and cautioned him against filing any further motions to stay the case.  Ex. B.  Undeterred, Mr. Clevenger filed another motion to stay the *Robertson* Action in the D.C. Circuit less than one week after he had been warned not to do so; on October 19, 2010, the D.C. Circuit sanctioned Mr. Clevenger for failing to "heed" its warning against unnecessary submissions and imposed a fine of $6,446.06 by separate order on December 14, 2010.  *See* Exs. C, D.

Mr. Clevenger and his client also tried to exploit a bankruptcy proceeding, *In re W.A.R. LLP*, to derail or undo the *Robertson* Action by means of an automatic stay, arguing that W.A.R. LLP had retained an interest in the $3.4 million transferred to Mr. Robertson's personal bank account.  Each of Western District of Tennessee Bankruptcy Judge Delk (who initially presided over the bankruptcy proceeding), D.C. Bankruptcy Judge Teel (to whom the proceeding was transferred) and Judge Huvelle ruled that W.A.R. LLP had no such interest.  Ex. E at 6.  On April 2, 2012, Chief Judge Lamberth of the D.C. District Court sanctioned Mr. Clevenger and his client for filing a frivolous appeal of Judge Teel's adoption of the trustee's determination that there were no assets for distribution, in which they raised that same point yet again.  Noting that Mr. Clevenger "cited no legal authority providing even a modicum of support" for his client's position, and that it was "unfounded whatsoever in the law," Judge Lamberth concluded that there was:

> no explanation for the appellants' prosecution of the underlying bankruptcy litigation except as a strategy to force Judge Huvelle to block further proceedings in the [*Robertson* Action] by operation of the automatic stay provision, and thus to avoid a verdict in that case that Robertson had defrauded Cartinhour.  The same

- 4 -

> motivation in all likelihood applies to the prosecution of the
> appeal.

*Id*. at 5–7.  Judge Lamberth ordered Mr. Clevenger and his client to pay a sanction of $7,249 for the frivolous appeal.  Although in his *pro hac vice* application Mr. Clevenger discloses that he has been sanctioned by the D.C. District Court on the ground of "multiplied proceedings" in the *Robertson* Action, he did *not* disclose this separate sanction by the D.C. District Court in the W.A.R. LLP bankruptcy, which was imposed on the different ground of baseless pleadings. Clevenger Aff., Doc. No. 70-1, ¶ 6.

One month later, Judge Teel imposed an additional $10,000 fine on Mr. Clevenger because he had "repeatedly advanced" the frivolous argument that the automatic stay barred prosecution of Dr. Cartinhour's claims in the *Robertson* Action "all for the purpose of causing delay and unnecessary expense."  *In re W.A.R. LLP*, No. 11-00044, 2012 WL 1576002, at *1 (Bankr. D.D.C. May 4, 2012), *reconsidered, in part*, No. 11-00044, 2012 WL 4482664, at *1-3, *6 (Bankr. D.D.C. Sept. 26, 2012) (adhering to holding of bad faith but reducing sanctions to $5,000 due to inability to pay), *aff'd*, 535 B.R. 1 (D.D.C. 2015).  In a lengthy opinion, Judge Teel explained how Mr. Clevenger had "joined" his client "in knowingly and in bad faith advancing frivolous arguments in [the] bankruptcy case."  *Id.*  Judge Teel's finding of bad faith was based in part on Mr. Clevenger's assertion that the automatic stay rendered the judgment in the *Robertson* Action "void *ab initio*."  *Id.* at *15.  Judge Teel held that this argument—made in a bankruptcy appeal in the Western District of Tennessee and *in the RICO Action while it was pending in this Court*—was "part of a deliberately misleading litigation strategy intended to frustrate Cartinhour's collection efforts and was likewise intended to put Cartinhour to the burden and expense of having repeatedly to defend against meritless arguments."  *Id.*  Judge Teel specifically noted that in the RICO Action, Mr. Clevenger improperly told Judge Swain that the

- 5 -

automatic stay barred the *Robertson* Action *even though Judge Delk and Judge Huvelle had both previously ruled that it did not*.  *Id*.

Mr. Clevenger's conduct in the RICO Action initially brought in this Court was also the subject of sanctions issued against Mr. Clevenger by Judge Huvelle on August 10, 2012.  *See Robertson v. Cartinhour*, 883 F. Supp. 2d 121 (D.D.C. 2012), *aff'd*, 554 F. App'x 3 (D.C. Cir. 2014).  The RICO Action was filed in this Court on November 9, 2010, several months before the February 2011 jury trial in the *Robertson* Action, but was based on "many of the same facts and claims."  *Id*. at 126.  In October 2011, Judge Swain transferred the case to D.C. District Court, holding that the "decision to file suit in the Southern District of New York appears to have been principally a tactical maneuver to avoid the jurisdiction of the D.C. Court."  *Robertson v. Cartinhour*, 10 Civ. 8442 (LTS), 2011 WL 5175597, at *5 (S.D.N.Y. Oct. 28, 2011).  After the transfer, Judge Huvelle dismissed the RICO Action, concluding that it was "wasteful and duplicative" as well as "foreclosed as a matter of law" and "brought for no legitimate purpose but rather for harassment and delay."  *Robertson*, 883 F. Supp. 2d at 128.  Later, Judge Huvelle sanctioned Mr. Clevenger, holding that his continued pursuit of the RICO Action after the adverse judgment in the *Robertson* Action in February 2011 "was far more than recklessly indifferent; he acted in bad faith and with utter disregard for the judicial system."[2]  *Id.*  The award of sanctions was expressly based on Mr. Clevenger's conduct in *this Court* as well as D.C. District Court.  *Id*. at 126-30.  As a result, Mr. Clevenger was ordered to pay $123,802.17 in sanctions pursuant to 28 U.S.C. § 1927.  Ex. F.

---

[2]     Judge Huvelle did not sanction Mr. Clevenger for the initial filing of the RICO Action in this Court only because she had declined to issue an anti-suit injunction shortly before the trial of the *Robertson* Action.  *Id*. at 126-27.  Although the record supported Dr. Cartinhour's claim "that many of Robertson's filings have been frivolous or harassive," Judge Huvelle concluded that the filings did not then reach "the level to warrant issuance of an anti-suit injunction," reserved for "the most egregious cases."  *Robertson v. Cartinhour*, No. 09-01642 (ESH), 2010 WL 11541592, at *3 (D.D.C. Dec. 30, 2010).

On January 31, 2013, the D.C. Circuit again granted a motion for sanctions against Mr. Clevenger, ordering that he and his client pay sanctions of double the costs and attorneys' fees incurred in litigating an unfounded appeal.  Ex. G.  The Court advised that "any further frivolous filings" could result in Mr. Clevenger "being enjoined from filing in this case or from filing any civil appeals or original actions in this court."  *Id.* at 2.  A March 27, 2013 order fixed the amount of the sanctions at $30,935.  Ex. H.  The following year, a different three-judge panel of the D.C. Circuit adopted a Report and Recommendation of the Committee on Admissions and Grievances and ordered that Mr. Clevenger be publicly reprimanded for violating D.C. Rules of Professional Conduct 3.1 and 8.4(d) by presenting frivolous arguments to the Court in that same appeal.  Ex. I.

Finally, on November 25, 2014, Judge Lamberth took the extraordinary course of imposing a filing injunction on Mr. Clevenger's clients.  *In re W.A.R. LLP*, 529 B.R. 5 (D.D.C. 2014).  Judge Lamberth enjoined them from further filings in the two cases before him, from filing further appeals from the underlying bankruptcy case, and from filing new matters related to those cases.  *Id.*

### B. Mr. Clevenger's Suspension by and Resignation from the Bar of the United States District Court for the District of Columbia

In December 2014, Dr. Cartinhour's counsel filed a grievance against Mr. Clevenger with the Committee on Grievances of the D.C. District Court.  Ex. A at 1.  In December 2015, after giving Mr. Clevenger an opportunity to respond, the Committee on Grievances recommended that Mr. Clevenger be disbarred.  *Id.* at 8.

On November 30, 2016, the Disciplinary Panel of the D.C. District Court suspended Mr. Clevenger from practice for 120 days and fined him $5,000.  Ex. J.  As an "integral part" of the order, Mr. Clevenger submitted a letter of resignation from the bar of the United States

District Court for the District of Columbia, which took effect after his four-month suspension. *Id.* The three-judge disciplinary panel specifically found that there was a factual and legal basis for the charges filed against Mr. Clevenger for (1) engaging in conduct that seriously interferes with the administration of justice, in violation of D.C. Rule of Professional Conduct 8.4(d), (2) bringing or defending a proceeding or asserting an issue without a basis in law and fact, in violation of D.C. Rule of Professional Conduct 3, and (3) delaying a proceeding to harass or injure another and not making reasonable efforts to expedite litigation, in violation of D.C. Rule of Professional Conduct 3.2. *Id.* None of the judges serving on the Disciplinary Panel (Judge Cooper, Judge Mehta and Judge Moss) had been involved in the *Robertson* Action, the RICO Action, or the W.A.R. LLP bankruptcy.

### C. Sanctions Imposed on Mr. Clevenger in the Western District of Texas by Four Federal Judges Resulting in a Public Reprimand by the Texas State Bar

In 2009, Mr. Clevenger filed *Erwin v. Russ*, in which he represented 24 plaintiffs in a lawsuit against 53 lawyers at a Texas law firm and a state court judge. 481 F. App'x 128, 130 (5th Cir. 2012). The central theme of the case was that the judge and the law firm "conspired . . . to undermine the judicial process," resulting in the firm's "consistently winning cases brought before" the judge. *Id.* In May 2009, after dismissing all of the plaintiffs' claims, Judge Smith of the Western District of Texas awarded sanctions in the amount of $25,000 against Mr. Clevenger and his clients. *Erwin v. Russ*, No. W:09-CA-127, 2011 WL 13175544, at *1 (W.D. Tex. Mar. 9, 2011), *aff'd*, 481 F. App'x 128 (5th Cir. 2012). The court held that all of the plaintiffs' RICO, § 1983 and state conspiracy claims were "frivolous," that claims by certain plaintiffs who had already settled claims against the defendants were "especially egregious," and that "[n]o responsible attorney would have included the baseless claims raised in these lawsuits." *Id.* at *2, *3. The court also held that Mr. Clevenger had multiplied the proceedings "unreasonably and

vexatiously" by adding "a variety of unrelated plaintiffs with unrelated claims," such as child custody claims. *Id.* at *3. The court further relied upon the fact that Mr. Clevenger had initially brought a *qui tam* proceeding against the same defendants, in which he served as plaintiff, as well as an identical case in the Southern District of Texas, both of which imposed additional expense on the defendants. *Id.* Both the dismissal and the sanctions were affirmed by a three-judge panel of the Fifth Circuit in 2012. *Erwin*, 481 F. App'x at 131-32.

The Texas State Bar publicly reprimanded Mr. Clevenger on August 18, 2014. Ex. K. Mr. Clevenger was reprimanded for violating Rule 3.02 of the Texas Disciplinary Rules of Professional Misconduct (which prohibits taking positions that unreasonably increase the costs or burdens of a case or unreasonably delay resolution of a matter) by filing the two *Erwin v. Russ* cases asserting the same RICO claims in the Western and Southern Districts of Texas. *Id.* at Second Amended Disciplinary Petition, Section IV. Mr. Clevenger was also ordered to pay fees and costs of $1,100. *Id.* at 1.

### D. Pending Disciplinary Charges Brought Against Mr. Clevenger by the California State Bar

On June 9, 2017, the bar for the State of California initiated disciplinary proceedings against Mr. Clevenger through a Notice of Disciplinary Charges. Ex. L. The Notice of Disciplinary Charges proposed discipline based on two instances of "Professional Misconduct in a Foreign Jurisdiction," namely the Texas and United States District Court for the District of Columbia misconduct described above. *Id.* Mr. Clevenger filed his answer to the notice on July 3, 2017, admitting the facts underlying the misconduct but denying any violation of the Rules of Professional Conduct in California. Ex. M. Mr. Clevenger asserted defenses of selective prosecution and First Amendment retaliation. *Id.*

True to form, Mr. Clevenger launched a duplicative lawsuit in the Northern District of California to enjoin the California bar disciplinary proceeding on the same selective prosecution and First Amendment retaliation grounds that he was asserting as defenses there.  The district court abstained from exercising jurisdiction over Mr. Clevenger's claims under the *Younger v. Harris* abstention doctrine and that decision is now on appeal to the Ninth Circuit.  Ex. N at 2, 4. While Mr. Clevenger brags that the California State bar "recently abated" the California disciplinary proceeding while he pursues that appeal, Clevenger Aff., Doc. No. 70-1, ¶ 11, that action is still active.[3]  Any delay in prosecution does not mean that the California bar has tempered its commitment to disciplining Mr. Clevenger, who is only an "inactive" member of that bar.  Ex. O.  Rather, it means that Mr. Clevenger still lives by his standard playbook of filing duplicative lawsuits to obstruct proceedings.

### E.  Mr. Clevenger's History in this Court

As discussed above (but not disclosed by Mr. Clevenger), Judge Huvelle has already sanctioned Mr. Clevenger for his bad faith pursuit of the RICO Action in this Court after the adverse judgment in the *Robertson* Action.  *Robertson*, 883 F. Supp. 2d 121.  And Judge Teel, in sanctioning Mr. Clevenger in the W.A.R. LLP bankruptcy, held that Mr. Clevenger had acted in bad faith when he represented to Judge Swain in the RICO Action that the automatic stay prohibited the *Robertson* Action, when two federal judges had previously ruled that it did not.  *In re W.A.R.,* 2012 WL 1576002, at *15.  This misconduct occurred when Mr. Clevenger enjoyed the privilege of appearing in this Court *pro hac vice*.  Clevenger Aff., Doc. No. 70-1, ¶ 3.

Mr. Clevenger's initial forays into this matter augur continued misconduct in this Court, should his pending *pro hac vice* application be granted.

---

[3]      A status conference is scheduled for June 18, 2018.  *See* The State Bar of California, Clevenger, Ty Odell, http://apps.statebarcourt.ca.gov/detailview.aspx?y=17&id=5989.

First, Mr. Clevenger has already been less than candid with the Court in his *pro hac vice* application. He discloses only that he has been sanctioned by D.C. District Court in the RICO Action and by the D.C. Bankruptcy Court and the D.C. Circuit Court without mentioning either (a) that the D.C. District Court also sanctioned him in the W.A.R. LLP bankruptcy matter; and (b) that the D.C. Circuit Court censured him in addition to sanctioning him *twice*. *See* Clevenger Aff., Doc. No. 70-1, ¶¶ 6, 8. Nor does Mr. Clevenger disclose that the sanctions issued by Judge Huvelle of the D.C. District Court and Judge Teel of the D.C. Bankruptcy Court *both* relate to his conduct in the RICO Action, the one and only time he was admitted *pro hac vice* in this Court.[4] *See Robertson*, 883 F. Supp. 2d at 121; *In re W.A.R.,* 2012 WL 1576002, at *15.

Second, Mr. Clevenger has abused this Court's lenity in permitting him to attend the *ex parte* hearing on the Wigdor firm's withdrawal motion. Even though the Court held that hearing *in camera* to avoid public disclosure of any confidential or privileged information, Mr. Clevenger nonetheless spoke to a reporter about it, telling him that "Judge Pauley asked about the timing of Wigdor['s] withdrawal," and opining that "'I would much rather be in our shoes than in [Wigdor's] shoes.'" Ex. Q. Mr. Clevenger also purported to describe the substance of Defendants' confidential settlement discussions with Plaintiff, saying (falsely) that Defendants had demanded "a 'one-way NDA'" that would have "prohibited [Plaintiff] from talking about her experience with Fox News."[5] *Id*. The public disclosure of matters discussed at

---

[4]   Mr. Clevenger's sworn affidavit also erroneously states that he is "a former member of the bar of this Court." Clevenger Aff., Doc. No. 70-1, ¶ 3. The clerk's office for the United States District Court for the Southern District of New York has no record of Mr. Clevenger ever having been admitted as a member of the bar of this Court and confirms that his only admission has been *pro hac vice*. *See* Ex. P.

[5]   Without waiving the confidentiality of those settlement discussions, Defendants state that Mr. Clevenger's assertion was incorrect; Defendants did not seek to prohibit Plaintiff from discussing her experience with Fox News in a "one-way" NDA or otherwise.

an *in camera ex parte* hearing and inadmissible settlement discussions may violate Rule 3.6 of New York's Rules of Professional Conduct.

Finally, in the affidavit offered in support of his *pro hac vice* application, Mr. Clevenger does not acknowledge that his prior conduct was improper or give any other sign that he will not repeat it.  To the contrary, his affidavit diminishes the gravity of the sanctions against him and maligns the bodies that imposed them.  For example, he tries to explain away his Texas reprimand by saying that that he "settled for a reprimand" on one charge after two other charges were purportedly "dismissed."[6]  Clevenger Aff., Doc. No. 70-1, ¶ 9.  He notes that Judge Smith, who sanctioned him for filing a frivolous case, resigned after being accused of sexual misconduct, *id*. ¶ 7, even though that later resignation has no bearing on the propriety of the order imposing sanctions on Mr. Clevenger, which was affirmed by the Fifth Circuit.  He implies that the D.C. District Court Committee of Grievances pursued the grievance filed against him by Dr. Cartinhour's counsel in 2014 because the Committee's chair is a partner at Williams & Connolly, the firm where Judge Huvelle had been a partner before she was appointed to the bench in 1990.  *Id*. ¶ 10.  He even brags that "no other federal courts reciprocated the D.C. discipline," as though that were some kind of endorsement.  *Id*. ¶ 11.  To the contrary, it likely reflects his own failure to disclose that his resignation from the bar of the D.C. District Court was an "integral part" of that court's disciplinary action against him.  *See* Section F, below.

---

[6]     Mr. Clevenger's proffered excuse for the remaining charge of filing the same RICO case in both the Western and Southern Districts of Texas (that the Southern District case was filed because he "learned about Judge Smith's friendship with one of the *Erwin* co-conspirators," Clevenger Aff., Doc. No. 70-1, ¶ 9) is inconsistent with the cases' procedural history.  Mr. Clevenger continued to litigate both cases simultaneously but eventually did not oppose the defendants' motion to transfer the Southern District case to Judge Smith.  *See* Ex. R.

### F.  Other Examples of Mr. Clevenger's Ongoing Misconduct

Mr. Clevenger continues to flout his professional obligations in other matters.  Earlier today, plaintiff's counsel in *Rich v. Butowsky, et al.*, 18-cv-00681-RJL (D.D.C.), in which Mr. Clevenger represents one of the defendants, revoked their prior consent to his application to appear *pro hac vice*.  Ex. V.  Their opposition is based upon: (i) omissions in Mr. Clevenger's disclosure of his disciplinary record to Judge Leon, *id*. at 12-13; (ii) his publication of false and prejudicial extrajudicial statements about the case on his blog, including calling opposing counsel an "oily shyster," *id*. at 14-15; (iii) his publication of inaccurate, inadmissible information about plaintiff's settlement negotiations with a co-defendant, *id*. at 15-16; and (iv) harassing the plaintiff by demanding that he sign a bogus release of information held by third parties, *id*. at 16.

In addition to the omissions in his *pro hac vice* applications here and in the D.C. District Court, Mr. Clevenger has not been candid about his sanction and disciplinary history with bar authorities.  The California State Bar has faulted Mr. Clevenger for his failure to bring his disciplinary history to its attention.  *See, e.g.*, Ex. S at 4 ("On February 11, 2013, the State Bar sent Clevenger a letter informing him that the Bar was aware of numerous sanctions imposed against him by various federal courts, none of which he reported to the State Bar.").  In a letter to the California bar, which was "identical in substance to the letters Clevenger sent to the other nine jurisdictions he is admitted in," he omitted to mention that he had "*resigned* from the D.C. Bar in lieu of potential disbarment."  *Id*. at 6 (emphasis in original).

Finally, even though he is "still practicing actively in Texas and in federal courts there and elsewhere," Clevenger Aff., Doc. No. 70-1, ¶ 13, Mr. Clevenger has been doing so while working in New York for at least the last two and a half years (based on the New York address

appearing on his legal filings), and claims to be living in Brooklyn.[7]  He is not, however, a member of the New York bar, and did not seek to become a member of the New York bar until last month.  Clevenger Aff., Doc. No. 70-1, ¶ 4.

## ARGUMENT

## THE COURT SHOULD DENY MR. CLEVENGER'S *PRO HAC VICE* APPLICATION

Rule 1.3(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York states that lawyers in good standing of the bar of any state "may be permitted to argue or try a particular case."  An applicant must state if he or she "has ever been censured, suspended, disbarred or denied admission or readmission by any court" and "whether there are any disciplinary proceedings presently against the applicant," and provide "the facts and circumstances surrounding any affirmative responses to" those queries.  *Id.*  Admission *pro hac vice* is a privilege, not a right because "admission to the Bar of one state does not carry with it the right to practice law anywhere else."  *In re Rappaport*, 558 F.2d 87, 89 (2d Cir. 1977) (affirming denial of *pro hac vice* application).

Mr. Clevenger's record disqualifies him from enjoying the privilege of practicing in this Court.  The Committee of Grievances of the D.C. District Court recommended that Mr. Clevenger be disbarred based on its conclusion that he had repeatedly violated several provisions of the D.C. Rules of Professional Conduct; that court's Disciplinary Panel instead accepted his resignation after imposing a 120-day suspension and fine.  Exs. A, J.  That punishment was based on an egregious history of filing excessive motions, meritless appeals, and

---

[7]      A September 11, 2015 filing in a case in the United States District Court for the Western District of Texas lists a business address in New York, New York, Ex. T, as does his November 1, 2016 letter resigning from the bar of D.C. District Court, Ex. J.  Mr. Clevenger lists a P.O. Box in Brooklyn as his address with the California and Texas State bars, in his response to the Notice of Disciplinary Charges in California filed in July 2017 and in his Motion for Permission to Appear *Pro Hac Vice*.  *See* Ex. O; Ex. U; Ex. M; Clevenger Aff., Doc. No. 70-1, ¶ 2.  His Complaint in *Clevenger v. Dresser*, attached to his response to the Notice of Disciplinary Charges, alleges that he resides in Brooklyn, New York.  Ex. M at Ex. 1, ¶ 8.

- 14 -

duplicative proceedings—including the RICO Action filed in this Court in which he appeared *pro hac vice*—for the purpose of obstructing an 82 year-old judgment creditor's collection of a $7 million judgment.  This Court does not countenance such professional misconduct among the attorneys who are permitted to practice here *pro hac vice*.  *See*, *e.g.*, *In re Morrisseau*, 763 F. Supp. 2d 648, 665 (S.D.N.Y. 2011) (attorney who violated N.Y. Rules of Professional Conduct when admitted *pro hac vice* precluded from appearing at the bar of this Court with "no time limit").

Mr. Clevenger maintains in his affidavit that all of the sanctions he described arose from events occurring in or before 2012, implying that he has engaged in no misconduct since that time.  Clevenger Aff., Doc. No. 70-1, ¶ 12.  But far from turning over a new leaf, Mr. Clevenger's evident contempt for his professional obligations persists.  He has not been forthright about his disciplinary history in his communications with the California Bar or the other federal district courts to which he has been admitted.  He has not been forthright with this Court or the D.C. District Court about the sanctions previously imposed upon him, a factor that the Second Circuit took into account in affirming the denial of a *pro hac vice* application in the *Rappaport* case.  *In re Rappaport*, 558 F.2d at 89 (noting that applicant sought to "minimize" his prior history).  Rather than try to defend the California disciplinary proceedings against him, he started a duplicative federal lawsuit to stymie it.  And the very fact that he now practices in New York, even though he is not a member of the New York bar, likely violates N.Y. Judiciary Law

§ 478.[8]  Lawyers who are not admitted in New York cannot practice in this state, even if they confine their work to advising on federal law or the law of another state.[9]

The Fox Defendants are concerned that Mr. Clevenger will continue his obstructionist tactics in his representation of Plaintiff in this case, causing unnecessary delay and expense and hindering the timely resolution of this case.  The Fox Defendants are also concerned that Mr. Clevenger will try to turn this case into a media circus.  Mr. Clevenger has already flouted this Court's expectations by discussing an *in camera ex parte* proceeding with a reporter, including purporting to share inadmissible settlement discussions, in violation of Rule 3.6 of the Professional Rules of Conduct.  Such extrajudicial statements are also part of his standard playbook, as evidenced by his blog post about the *Rich* case.  Under these circumstances, the Court should decline to permit Mr. Clevenger the privilege of appearing before this Court *pro hac vice* as counsel for Plaintiff in this case.

## CONCLUSION

As set forth above, the Motion to Appear *Pro Hac Vice* filed by Ty Clevenger should be denied.

---

[8]      *See Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 165 (2d Cir. 1966) ("[V]irtually no legal services may be rendered in New York by a person not admitted to the state bar except for 'customary and innocuous practices' in transactions only 'somehow' tied to New York."); *El Gemayel v. Seaman*, 72 N.Y.2d 701, 706 (1988) ("The 'practice' of law reserved to duly licensed New York attorneys includes the rendering of legal advice as well as appearing in court and holding oneself out to be a lawyer.").

[9]      *In re Roel*, 3 N.Y.2d 224, 229 (1957) (restraining a Mexican lawyer from advising on Mexican divorce law in New York); *Gover v. Savyon*, 111 A.D.3d 887, 888 (2d Dep't 2013) (Israeli attorney violated Jud. L. § 478 for services performed in New York but not for services performed elsewhere); *Samouroukov v. Kamenev*, 51 Misc. 3d 141(A) (N.Y. App. Term. 2016) (attorney not admitted in New York could not provide legal advice in New York for a lawsuit in Russia).

Dated:   New York, New York
          June 13, 2018                              DECHERT LLP


                                                     By:   */s/ Linda C. Goldstein*
                                                         Andrew J. Levander
                                                         Linda C. Goldstein
                                                         Nicolle L. Jacoby

                                                     1095 Avenue of the Americas
                                                     New York, New York 10036
                                                     (212) 698-3500

                                                     *Attorneys for Defendants Twenty-First Century*
                                                     *Fox, Inc. and Fox News Network, LLC*